# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| LISA BOWLES, | ) | |
|    Plaintiff, | ) | |
| v. | ) | No. 2:22-cv-2660-SHL-atc |
| ESTES EXPRESS LINES CORPORATION, | ) | |
|    Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR DISCOVERY AND PLAINTIFF'S MOTION TO STRIKE**

Before the Court are Plaintiff Lisa Bowles's ("Mrs. Bowles") Motion for Summary Judgment in Lieu of Motion to Reconsider ("Motion for Summary Judgment"), filed March 23, 2023 (ECF No. 36); Defendant Estes Express Lines Corporation's ("Estes") Motion to Affirm the Decision Denying Plaintiff's Claim for the Optional Life Benefit, and to Strike Plaintiff's Motion for Summary Judgment in Lieu of Motion to Reconsider, or, Alternatively, Response in Opposition to Plaintiff's Motion for Summary Judgment in Lieu of Motion to Reconsider, and Cross-Motion for Summary Judgment ("Defendant's Motion to Strike" and "Cross-Motion for Summary Judgment"), filed April 24, 2023 (ECF No. 41); Plaintiff's Motion to Open Formal Discovery, or in the Alternative, Motion to Strike ("Motion for Discovery" and "Plaintiff's Motion to Strike"), filed April 26, 2023 (ECF No. 46); and Defendant's Response in Opposition to Plaintiff's Motion to Open Formal Discovery, or in the Alternative, Motion to Strike, filed on

May 1, 2023 (ECF No. 48).[1]  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion to Strike is **DENIED**, Defendant's Cross-Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Discovery is **DENIED**, and Plaintiff's Motion to Strike is **DENIED**.

## BACKGROUND[2]

Zrano Bowles ("Mr. Bowles") worked as a dock worker for trucking company Estes at its terminal in Memphis, Tennessee, from August 2013 until his death on June 29, 2021. (ECF No. 44 at PageID 485.)  Through his employer, Mr. Bowles enrolled in an optional life benefit plan (the "Plan") insured by The Guardian Life Insurance Company of America ("Guardian") beginning in the 2015 benefit year. (Id.)  Estes was designated the plan administrator, while Guardian was the claims administrator for the Plan. (Id. at PageID 485–86.)  The terms of the Plan state that "[i]f you are required to pay all or part of the cost of this coverage and you fail to do so, your coverage ends." (ECF No. 30-1 at PageID 280.)

In June 2017, Mr. Bowles informed Estes that he had married Mrs. Bowles, whom he designated as the primary beneficiary of the $100,000 life insurance benefit. (ECF No. 44 at PageID 485.)  From 2015 until around July 2017, Estes deducted premium payments for the life insurance benefit from Mr. Bowles's paycheck and remitted them to Guardian. (Id. at PageID 486.)  Around July 2017, the premiums stopped being deducted. (Id.)  It is unclear from the record whether the payments stopped due to a clerical error by Estes or as a result of an action taken by Mr. Bowles. (ECF No. 42 at PageID 468.)

---

[1] During the May 16, 2023 Status Conference, the Court allowed Plaintiff's Motion for Summary Judgment and Plaintiff's Motion for Discovery to serve as the response to Defendant's Cross-Motion for Summary Judgment.  (See ECF No. 52.)

[2] The factual recitation included is undisputed, unless otherwise noted.

2

After Mr. Bowles's death on June 29, 2021, Mrs. Bowles filed a claim for life benefits with Guardian but was denied because the Plan lapsed in July 2017 when the premium payments stopped. (ECF No. 17 at PageID 65.) Guardian denied Mrs. Bowles's appeal of the denial of benefits. (ECF No. 28-5 at PageID 243; ECF No. 28-6 at PageID 246.)

After Guardian's denial, Mrs. Bowles filed suit against Estes, asserting a claim of breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as state law claims for negligence and breach of fiduciary duty. (See ECF No. 1.) On November 30, 2022, Mrs. Bowles filed an Amended Complaint, which added Guardian as a defendant and removed the state law claims. (ECF No. 23.) In her Amended Complaint, Mrs. Bowles argues that Estes had a duty to either continue remitting premium payments to Guardian or to notify Mr. Bowles that the payments had ceased.[3] (Id. at PageID 97.)

Although the Complaint includes claims under both 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3), in the joint Rule 26(f) Report, Plaintiff represented that "[t]his is a claim for benefits under [ERISA] 29 U.S.C. § 1132(a)(1)(B)." (ECF No. 16 at PageID 60.) As a result, at the December 6, 2022 scheduling conference, the parties agreed that no discovery was necessary because the review of a § 1132(a)(1)(B) claim is normally limited to the administrative record. (ECF No. 26 at PageID 107); see Guest-Marcotte v. Life Ins. Co. of N. Am., 730 F. App'x 292, 304 (6th Cir. 2018). Accordingly, the Court's Scheduling Order required that, in lieu of discovery, the parties would produce the administrative record. (ECF No. 26 at PageID 107.) The only dispositive motion deadlines included in the Scheduling Order were Plaintiff's Motion

---

[3] On April 7, 2023, the parties filed a Stipulation of Dismissal of Plaintiff's Claims Against Guardian, reasoning that no recovery was available against Guardian because no optional life coverage was in effect at the time of Mr. Bowles's death. (ECF No. 36-1 at PageID 431; ECF No. 39.)

to Reverse the Decision Denying Benefits ("Motion to Reverse") and Defendant's Response and a Cross-Motion to Affirm the Decision. (Id.)

Mrs. Bowles filed the administrative record on January 9, 2023. (ECF No. 30.) It contained six exhibits, including Mr. Bowles's December 2017 pay stub, which showed the premium was no longer being deducted. (ECF No. 30-2 at PageID 335.)

Mrs. Bowles filed her Motion for Summary Judgment on March 23, 2023, although the motion was not permitted by the Scheduling Order. (ECF No. 36.) In the motion, Mrs. Bowles argues that Estes should pay compensatory damages of $100,000 under the more apt ERISA provision, 29 U.S.C. § 1132(a)(3). (ECF 36-1 at Page ID 428.) She contends that Estes breached its fiduciary duty to Mr. Bowles by failing to remit premium payments to Guardian or to notify Mr. Bowles that his optional life insurance benefit had lapsed. (Id. at PageID 427.) She asserts that summary judgment is proper because there is no evidence in the record showing that Estes notified Mr. Bowles between 2017 and 2021 that his optional life insurance plan had lapsed. (Id. at PageID 419.)

In response, Estes filed its Motion to Strike and Cross-Motion for Summary Judgment on April 24, 2023. (ECF No. 41.) In the motion, Estes argues that Mrs. Bowles's Motion for Summary Judgment must be struck for two reasons: (1) it is not permitted by the Scheduling Order, and (2) because § 1132(a)(1)(b) provides the exclusive remedy for Mrs. Bowles to challenge Guardian's denial of the optional life benefit. (ECF No. 42 at PageID 461–68.) In the alternative, Estes argues that the Court should grant summary judgment in Estes's favor because there is no evidence in the record that Mr. Bowles himself did not terminate the optional life insurance plan and because Estes can offer evidence that Mr. Bowles's weekly wage statements

notified him for four years that premiums were no longer being remitted to Guardian. (ECF No. 41 at PageID 446–47.)

In support of its motion, Estes submitted the declaration of Tracy Hughes, Vice President of Compliance, Benefits, and Spend Management, along with eight exhibits. (ECF No. 44.) The declaration and exhibits show that Mr. Bowles accessed Estes's online portal and made changes to his benefits after July 2017. (Id. at PageID 488.) One exhibit displayed a screenshot of the "Enrollments" page that Mr. Bowles would have seen when he accessed his online account on March 15, 2021, and which showed that he had "waive[d] coverage" for his optional life insurance. (ECF No. 44-8 at PageID 514.)

On April 26, 2023, Mrs. Bowles filed her Motion for Discovery and Plaintiff's Motion to Strike. (ECF No. 46.) She faults Estes both for withholding documents from her original administrative appeal to Guardian and for only submitting those documents in conjunction with Estes's own Cross-Motion for Summary Judgment. (Id. at PageID 530.) She argues that, because Estes never explained why the premium payments ceased in July 2017, she is entitled to open formal discovery to determine the cause. (Id.) In the alternative, Mrs. Bowles moves to strike the documents because they are outside of the administrative record.

## ANALYSIS

I. **Defendant's Motion to Strike**

As a preliminary matter, it must be determined whether Mrs. Bowles's Motion for Summary Judgment should be stricken either because her motion violates the Scheduling Order or because § 1132(a)(1)(B) is her exclusive remedy. As explained below, Defendant's Motion is **DENIED**.

      A.      <u>Violation of the Scheduling Order</u>

First, Estes argues that Mrs. Bowles cannot bring a motion for summary judgment because it violates the Scheduling Order. (ECF No. 41 at PageID 446.) The only dispositive motion deadline in the December 6, 2022 Scheduling Order was for a Motion to Reverse. (ECF No. 26 at PageID 107.) The Scheduling Order also reflects that "[t]he parties agree that no discovery is needed outside of the production of the ERISA Administrative Record." (<u>Id.</u>) Estes argues that, because the only motion contemplated by the Scheduling Order was a Motion to Reverse, Plaintiff should not be allowed to file a motion for summary judgment against Estes. (ECF No. 41 at PageID 446.)

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements." <u>Inge v. Rock Fin. Corp.</u>, 281 F.3d 613, 625 (6th Cir. 2002). Instead of filing a motion to amend the scheduling order, Mrs. Bowles, without leave, filed her Motion for Summary Judgment.

Despite the fact that she failed to file the appropriate motion, the Court finds good cause to construe her Motion for Summary Judgment as including a motion to amend the Scheduling Order. As is discussed in more detail below, if Mrs. Bowles were limited to filing a Motion to Reverse, no remedy would be available to her for the claim she brings against Estes because Guardian, not Estes, was the target of the administrative appeal. Indeed, it appears that Mrs. Bowles does not now contend that Guardian did anything wrong and thus it was dismissed from this action. The only claim remaining is the breach of fiduciary duty claim against Estes, and the only viable motion related to that claim is a motion for summary judgment. (ECF No. 23 at

PageID 96.) Because Estes was on notice that a claim remained that could only be addressed by a summary judgment motion, this alteration is appropriate.

Thus, the Court amends the Scheduling Order to allow Mrs. Bowles to file her Motion for Summary Judgment.

    B.    <u>Exclusive Remedy</u>

Next, Estes argues that Mrs. Bowles cannot recover under 29 U.S.C. § 1132(a)(3) because she already "availed herself of the remedy available to her under § 1132(a)(1)(B)." (ECF No. 42 at PageID 466.) Sections 1132(a)(1)(B) and 1132(a)(3) are remedial provisions under ERISA. Each lays out a method by which a beneficiary can seek to recover denied benefits. Because the pursuit of one avenue does not preclude the pursuit of another, Defendant's argument on this point is unpersuasive.

Under § 1132(a)(1)(B), a civil action may be brought by "a participant or beneficiary . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan[.]" This section allows a beneficiary to recover the "benefits due [them] under the terms of [the] plan." <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 515 (1996).

In contrast, under § 1132(a)(3), a civil action can be brought by a participant, beneficiary or fiduciary:

    (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

    (B) to obtain other appropriate equitable relief

        (i) to redress such violations or

        (ii) to enforce any provisions of this subchapter or the terms of the plan.

Congress created § 1132(a)(3) as a "catchall" provision, "act[ing] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Davis v. Hartford Life & Accident Ins. Co., 980 F.3d 541, 550 (6th Cir. 2020) (quoting Varity, 516 U.S. at 512). As a result, a claimant may only bring a claim for equitable relief under § 1132(a)(3) if no relief is available under § 1132(a)(1)(B). Varity, 516 U.S. at 515. However, a claimant can recover under both provisions, as long as the initial remedy under § 1132(a)(1)(B) "is otherwise shown to be inadequate." Rochow v. Life Ins. Co. of N. Am., 780 F.3d 364, 372 (6th Cir. 2015) (en banc).

In Varity, the defendant, an employer operating an ERISA-governed plan for medical and other nonpension benefits, engaged in "deliberate deception" to induce its employees to switch their enrollment to a separate, failing division of the company. 516 U.S. at 494. After this division went into a receivership two years later, the plaintiff-employees lost all their nonpension benefits. Id. As a result, the plaintiffs were unable to bring a recovery-of-benefits claim under § 1132(a)(1)(B). Id. at 515. The Supreme Court held that the plaintiffs were therefore eligible for equitable relief under § 1132(a)(3), reasoning that the plaintiffs "must rely on the third subsection or they have no remedy at all." Id.

Here, Bowles acknowledges that she has no remedy under § 1132(a)(1)(B) against Guardian because Estes did not remit premium payments for four years, which ended Mr. Bowles's coverage. (ECF No. 36-1 at PageID 431.) Indeed, because Mr. Bowles had no continuing contract with Guardian, the parties agreed that Guardian should be dismissed as a defendant. (Id.; ECF No. 39.) Therefore, equitable relief under § 1132(a)(3) against Estes is her only remedy. (Id.) Because Bowles "must rely on the third subsection or . . . have no remedy at

8

all," she is not barred from bringing a breach of fiduciary claim under § 1132(a)(3).  Varity, 516 U.S. at 515.

* * * *

Because Mrs. Bowles is not barred procedurally or as a matter of law from filing her Motion for Summary Judgment, Estes's Motion to Strike is **DENIED**.

II.     **Motion for Discovery and Plaintiff's Motion to Strike**

In her Motion for Discovery, Mrs. Bowles argues that, because Estes never explained why the premium payments ceased in July 2017, she is entitled to open formal discovery to determine the cause.  (ECF No. 46 at PageID 533.)  However, at the status conference on May 16, 2023, she argued that "if the Court were to open discovery, the most important issue would be the fiduciary status of Estes."  (Status Conference Recording at 32:36 (May 16, 2023), ECF No. 52.)  But whether Mrs. Bowles seeks discovery to determine the cause of the stopped payments or to confirm Estes's fiduciary status, the Court finds there is already sufficient evidence in the record and that no further discovery is needed.

As is discussed below, the Court finds that Estes is a fiduciary and had a duty to administer the plan prudently.  However, while it is unclear whether the payments at issue stopped because Estes made a clerical error or because Mr. Bowles himself affirmatively decided to stop payments, neither is sufficient to make out a claim for breach of fiduciary duty.  Because the administrative record already contains the evidence needed to rule on the cross-motions for summary judgment, Mrs. Bowles's Motion for Discovery is **DENIED**.

As an alternative to discovery, Mrs. Bowles seeks to strike the documents submitted in support of Estes's Cross-Motion for Summary Judgment because they are outside of the administrative record.  If Mrs. Bowles had complied with the Scheduling Order and filed a

9

Motion to Reverse, rather than a Motion for Summary Judgment, there would have been no need for Estes to file a Cross-Motion for Summary Judgment that relied on material outside of the administrative record. Because the Court is allowing Mrs. Bowles to file a Motion for Summary Judgment, Estes is also allowed to support its Cross-Motion for Summary Judgment with documents outside of the administrative record. The Motion to Strike is **DENIED**.

**III.     Cross-Motions for Summary Judgment**

Both parties filed Motions for Summary Judgment, including responses and replies, seeking judgment on the claim for breach of fiduciary duty alleged here. (ECF Nos. 36, 41, 49.) Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court is to view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or must argue that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). The opposing party "cannot rest solely on the allegations made in [their] pleadings." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002)). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although the court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.  The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251–52).

To succeed on a claim for breach of fiduciary duty under ERISA, a plaintiff must prove: "(1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." Chelf v. Prudential Ins. Co. of Am., 31 F.4th 459, 464 (6th Cir. 2022).  Mrs. Bowles argues that summary judgment should be granted in her favor because Estes was the plan administrator and breached its fiduciary duty by failing to properly remit premiums to the insurer and/or failed to notify Mr. Bowles of the resultant policy lapse. (ECF No. 36 at PageID 407–08.)  In response, Estes argues that the Court should grant summary judgment in its favor because, even if it had a fiduciary duty to Mr. Bowles, the record shows that Mr. Bowles's weekly wage statements notified him that premiums were no longer being remitted to Guardian after July 2017.  (ECF No. 41 at PageID 446–47.)

As an initial matter, Mrs. Bowles argues that "Estes is a fiduciary for the Plan by simple virtue of the fact that it is a named fiduciary in the Plan documents, specifically that Estes is named as the Plan Administrator and Plan Sponsor."  (ECF No. 36-1 at PageID 424.)

ERISA defines a fiduciary as one who exercises a discretionary function, rather than a merely ministerial one:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of

11

>its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in § 1002(21)(A). "For example, a *plan administrator* or a trustee of a plan must, by the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of [§ 1002(21)(A)]. Persons who hold such positions *will therefore be fiduciaries*." 29 C.F.R. § 2509.75-8 (emphasis added). As Estes is the plan administrator, Estes is a fiduciary for the Plan.

The heart of the dispute here is whether Estes breached its fiduciary duty. Mrs. Bowles contends that it did by failing to: (1) deduct and remit insurance premiums to Guardian, and/or (2) provide the requisite notice of lapse of the policy to either her or Mr. Bowles. (ECF No. 36-1 at PageID 424.) Estes argues in response that its "purely administrative acts of deducting and remitting premiums or notifying Mr. Bowles his coverage terminated when he failed to pay weekly premiums are not discretionary acts that give rise to a breach of fiduciary duty claim." (ECF No. 42 at PageID 469–70.)

"ERISA imposes a 'prudent person' fiduciary obligation, which is codified in the requirement that a plan fiduciary exercise his duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.'" Stark v. Mars, Inc., 518 F. App'x 477, 483 (6th Cir. 2013) (quoting Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 547 (6th Cir. 1999)). A fiduciary is also required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29

U.S.C. § 1104(a). Applying this standard, each of the actions argued by Mrs. Bowles as breaches are considered below.

  A. <u>Duty to Remit Payments</u>

First, Mrs. Bowles argues that Estes breached its fiduciary duty by failing to deduct and remit policy premiums. Although it is unclear from the record whether the deductions stopped because Estes made a clerical error or because Mr. Bowles himself affirmatively decided to stop payments (ECF No. 42 at PageID 468), not even a clerical error by Estes would amount to a breach of its fiduciary duty. Because the deducting of premium payments is merely a ministerial act, not a discretionary one, Estes did not breach a duty to remit premium payments.

As stated above, Estes is a fiduciary for the Plan. However, to be held liable for a breach of fiduciary duty under § 1132(a)(3), the actions taken by Estes must fall within the statutory definition of "fiduciary" acts—discretionary acts of plan "management" and "administration." <u>Varity</u>, 516 U.S. at 502. Assuming for the sake of argument that Mr. Bowles did not cause the payments to cease, Estes's failure to deduct his weekly optional life insurance premiums would not have constituted a discretionary act, but rather it would have been a mistake made in its ministerial capacity. "To impose liability on a fiduciary under ERISA for breach of fiduciary duty, the fiduciary's conduct must constitute more than a 'clerical error.'" <u>Easa v. Florists' Transworld Delivery Ass'n</u>, 5 F. Supp. 2d 522, 528 (E.D. Mich. 1998). Thus, Estes's alleged failure to deduct and remit policy payments is not a breach of fiduciary duty. And, as is discussed below, any such failure was remedied when Estes notified Mr. Bowles of the lapse in coverage. <u>See, e.g.</u>, <u>Cook v. Jones & Jordan Eng'g, Inc.</u>, No. 5:06-cv-00627, 2009 WL 37376 (S.D.W.V. Jan 7, 2009) ("A fiduciary who has failed to pay health insurance premiums **and** to

13

inform employees of a lapse in their insurance coverage has not acted as a prudent man in like circumstances but rather has violated its duty of care." (emphasis added)).

      B.      <u>Duty to Notify</u>

Next, Mrs. Bowles argues that Estes breached its fiduciary duty when it failed to notify Mr. Bowles that coverage under the Plan would terminate. (ECF No. 36-1 at PageID 426.) Generally, ERISA plan administrators like Estes have no fiduciary duty to provide notice to participants "other than a summary plan description and information of the benefits." <u>Walker v. Fed. Express Corp.</u>, 492 F. App'x 559, 566 (6th Cir. 2012) (citing <u>Maxa v. Alden Life Ins. Co.</u>, 972 F.2d 980, 986 (8th Cir. 1992) ("[F]iduciaries should be able to rely upon the detailed and uniform guidance ERISA provides with regard to disclosure requirements rather than bearing the practically impossible burden of anticipating, and comprehensively addressing, the individualized concerns of thousands of employees, especially without notice of those concerns.")). However, plan administrators can breach a fiduciary duty if they make misrepresentations about the nature of the plan. <u>Varity</u>, 516 U.S. at 498.

Mrs. Bowles cites <u>Krohn v. Huron</u> for the proposition that a plan administrator breaches its fiduciary duty when it fails to notify a plan participant of a lapse in a benefit plan. (ECF No. 36-1 at PageID 429 (citing <u>Krohn</u>, 173 F.3d at 552).) In that case, an employee of Huron Memorial Hospital was permanently disabled in an automobile accident. 173 F.3d at 545. When a representative of the hospital met with the employee's spouse, the representative provided misleading information about the long-term disability benefits offered by the hospital. <u>Id.</u> Relying on the hospital's misrepresentation, the employee failed to file a timely claim for long-term disability benefits and was rejected. <u>Id.</u> at 546. The district court granted summary judgment to the hospital, finding that its fiduciary duty did not extend to disclosure of the

14

availability of long-term benefits.  Id.  The Sixth Circuit reversed, holding that the hospital breached its duty to disclose by failing to "give complete and accurate information in response to participants' questions."  Id. at 550 (quoting Drennan v. Gen. Motors Corp., 977 F.2d 246, 251 (6th Cir. 1992)).  However, Krohn does not apply here—this situation is not alleged to involve a failure to fully inform Mr. Bowles of the terms of the plan or a failure to answer his questions completely and accurately.

There are no allegations or evidence that Estes made any misrepresentations regarding the nature of the plan, and there was no fiduciary duty to notify Mr. Bowles that his premium payments ceased.  However, even though Estes did not have a fiduciary duty to do so, Estes repeatedly provided notice to Mr. Bowles, both through a line item printed on his check stubs and through a notification in its online benefits portal indicating that coverage had been waived.  (ECF No. 30-2 at PageID 332, 336; ECF No. 44-8 at PageID 514.)  The check stubs from July and December 2017, which Mrs. Bowles entered into the administrative record, make clear that premium payments stopped sometime after July 2017.  (ECF No. 30-2.)  Although the July 2017 check stub listed a deduction of $15.51 under the heading "Vol Life EE" (id. at PageID 332), the December 2017 pay stub listed an amount of $0.00 under the same heading (id. at PageID 336), thus indicating that payments were no longer being made.  Further, after July 2017, Mr. Bowles accessed Estes's online benefits portal, which displayed a line indicating that he had "waive[d] coverage" for his optional life insurance.  (ECF No. 44-8 at PageID 514.)  Thus, there is sufficient evidence in the record to show that Estes notified Mr. Bowles that his premium payments had stopped after July 2017.  Even if Estes had a fiduciary duty to notify him, it did not breach that duty.

Because the Court finds as a matter of law that Estes did not breach a fiduciary duty, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Cross-Motion for Summary Judgment is **GRANTED**.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion to Strike is **DENIED**, Defendant's Cross-Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Discovery is **DENIED**, and Plaintiff's Motion to Strike is **DENIED**.

**IT IS SO ORDERED,** this 15th day of March, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE